**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, and **THE STATE OF GEORGIA** *ex rel.* **BRANDY BENTLEY** and **SOLOMON TECKLE, M.D.,** | No. _____ |
| *Plaintiffs*, | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| v. | |
| **CRH HEALTHCARE, LLC, PEACHTREE IMMEDIATE CARE FP, LLC, PEACHTREE IMMEDIATE CARE NE, LLC,** and **PEACHTREE IMMEDIATE CARE UC, LLC,** | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs and *qui tam* Relators Brandy Bentley and Solomon Teckle, M.D.

("Relators"), by and through their undersigned counsel Brown, LLC and Bracker &

Marcus LLC, allege of personal knowledge as to their observations and actions, and

on information and belief as to all else, as follows:

### I.
### PRELIMINARY STATEMENT

1.     Defendants, who operate a chain of urgent care clinics in four states,

have defrauded the taxpayer by using the pandemic caused by the novel COVID-19

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

virus to reflexively claim that they are rendering a higher level of medical service than they are actually providing.

2.      Patients with mild or no symptoms, who test negative for COVID-19, are generally seen by providers for a couple of minutes and are sent home with a generic one-page sheet of paper with the Center for Disease Control (CDC) guidelines for COVID-19 test results and no follow-up care.

3.      Citing the risks associated with the virus, Defendants coded and billed these visits as a Level 4 Evaluation and Management (E/M) visit—the same level of service Defendants use to code E/M visits for COVID-*positive* patients.

4.      For patients who tested positive for COVID-19 and also had a comorbid condition, Defendants coded and billed these visits as a Level 5 Evaluation and Management (E/M) visit, despite the patients only being seen by providers for a couple of minutes and sent home with the same one-page CDC guidelines sheet for COVID-19 testing.

5.      Defendants harassed providers who refused to upcode.

6.      Relators bring this *qui tam* action on behalf of the United States of America under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA") to recover treble the damages sustained by, and civil penalties and restitution owed to, the United States as a result of Defendants' fraud.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

7.      Relators also bring this action on behalf of the State of Georgia under the Georgia State False Medicaid Claims Act, Ga. Code Ann. §§ 49-4-168.1 *et seq*., to recover treble the damages sustained by, and civil penalties and restitution owed to, the State of Georgia as a result of Defendants' fraud.

8.      This complaint is being filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2) and Ga. Code Ann. § 49-4-168.2(c)(2).

9.      A copy of this complaint, along with written disclosure of substantially all material evidence and information that Relators possess, was served on the Attorney General of the United States and the United States Attorney for the Northern District of Georgia, pursuant to 31 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. 4(d).

10.      A copy of this complaint, along with written disclosure of substantially all material evidence and information that Relators possess, was served on the Georgia State Attorney General, pursuant to Ga. Code Ann. § 49-4-168.2(c)(1).

## II.
## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq*., a federal statute. This Court has jurisdiction over the state-law claims pursuant to 31 U.S.C. § 3732(b).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

12.    The Court has personal jurisdiction over Defendants because Defendants are residents of, and are licensed to transact and do transact business in, this District, and have carried out their fraudulent scheme in this District.

13.    Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2), because Defendants can be found in, and transact or have transacted business in this District, and the events and omissions that give rise to these claims have occurred in this District.

14.    This Complaint is filed within the time period prescribed by 31 U.S.C. § 3731(b) and Ga. Code Ann. § 49-4-168.5.

### III.
### NO PUBLIC DISCLOSURE;
### <u>MATERIAL AND INDEPENDENT INFORMATION</u>

15.    Relators make the allegations in this Complaint based on their own knowledge, experience and observations.

16.    Relators are the original source of the information on which the allegations herein are based, and voluntarily disclosed such information to the Government Plaintiffs before filing this action.

17.    There has been no public disclosure, relevant under 31 U.S.C. § 3730(e) and Ga. Code Ann. § 49-4-168.2(i)(1), of the "allegations or transactions" in this Complaint. Alternatively, to the extent that any such public disclosure has been

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

made, Relators possess information that is independent of and materially adds to any allegations that may have been publicly disclosed.

## IV.
## THE PARTIES

### A.    Government Plaintiffs

18.    Relators bring this action on behalf of Plaintiff the United States of America. At all times relevant to this complaint, the United States, acting through the Centers for Medicare & Medicaid Services ("CMS"), has reimbursed Defendants for claims they submitted for medical services that were upcoded.

19.    Relators bring this action on behalf of Plaintiff the State of Georgia, which has reimbursed Defendants for falsely upcoded medical services through Georgia's Medicaid program.

### B.    Relators

20.    Relator Brandy Bentley is a citizen of the United States and, at all relevant times, has been a resident of Bartow County, Georgia. Since approximately July 9, 2020, Relator has worked as a nurse practitioner at Defendant's urgent care clinics and/or rapid testing sites in Cartersville, Canton, Woodstock, Marietta, Kennesaw, and Rockmart.

21.    Relator Dr. Solomon Teckle, M.D. is a citizen of the United States and, at all relevant times, has been a resident of DeKalb County, Georgia. Dr. Teckle has

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

served as the Regional Medical Director for Defendants' urgent care clinics and/or rapid testing sites in Brookhaven, Decatur, Decatur North, Edgewood, Midtown, and Tucker. Relator Teckle also worked as a fulltime provider at the Tucker location. Relator Teckle has also worked as a provider at rapid testing sites in North Decatur, Brookhaven, Morrow, Snellville, Austell, and Newman. Relator Teckle attended biweekly leadership calls, which included discussions of the new coding policy on a corporate-wide level. He thus has firsthand knowledge of the Defendants' scheme to submit false claims to Medicare and Medicaid.

## C.   Defendant CRH Healthcare, LLC

22.    Defendant CRH Healthcare, LLC ("CRH") is a Delaware limited liability company with a principal business address of 2675 Paces Ferry Rd SE, Suite 200, Atlanta, GA 30339.

23.    CRH owns and operates over 60 urgent care clinics and rapid testing sites in four states: Alabama, Georgia, Florida, and Maryland.

24.    Clinics in each state are organized under a separate subsidiary company owned by CRH. Peachtree Immediate Care is the subsidiary responsible for the clinics in Georgia, operating dozens of locations throughout north Georgia, including metro Atlanta, Columbus, and Athens.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

25.     In Florida, CRH does business as Patient First, with six urgent care locations and a COVID testing drive thru facility in Tallahassee.

26.     In Alabama, CRH does business as Urgent MedCare, with locations in Huntsville, Madison, and Meridianville.

27.     In Maryland, CRH does business as Patriot Urgent Care, with locations in Dunkirk, Edgewater, Hanover, Prince Frederick, Reisterstown, and Solomons.

**D.     Defendants Peachtree Immediate Care**

28.     Defendants Peachtree Immediate Care FP, LLC, Peachtree Immediate Care NE, LLC, and Peachtree Immediate Care UC, LLC, are all Georgia limited liability companies that share a registered principal business address of 2675 Paces Ferry Road SE, Suite 200, Atlanta, GA, 30339.

29.     Upon information and belief, the three corporate entities are commonly owned and controlled by CRH, and all do business as "Peachtree Immediate Care."

30.     Upon information and belief, Peachtree Immediate Care FP, Peachtree Immediate Care NE, and Peachtree Immediate Care UC, operate and are responsible for different clinics and testing sites within Georgia.

31.     For example, Peachtree Immediate Care FP operates, at a minimum, the CRH clinic located at Hiram, Georgia. Peachtree Immediate Care NE operates, at a

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

minimum, the CRH clinic located at Alpharetta, Georgia. Peachtree Immediate Care UC operates, at a minimum, the CRH clinic located at Decatur, Georgia.

32.    Because COVID-19 testing is offered at most, if not all, CRH clinics, and Defendants' fraudulent coding policy applies company-wide, all three Peachtree Immediate Care Defendants participated in the fraudulent conduct alleged herein.

33.    Thus, the conduct alleged in this complaint is attributable to all Defendants jointly and severally.

## V.
## STATUTORY & REGULATORY FRAMEWORK

### A.    The False Claims Act

34.    The FCA, 31 U.S.C. §§ 3729 *et seq.*, establishes liability for any "person" (natural or corporate) who, *inter alia*:

> (A)    "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(l)(A); or
>
> (B)    "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(l)(B).

35.    "Knowing" is defined by the FCA to include "deliberate ignorance of the truth" or "reckless disregard of the truth." *Id.* § 3729(b)(1).

36.    The FCA defines "claim" to include any request for money that:

> is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

advance a Government program or interest, and if the United States Government—

> (I)    provides or has provided any portion of the money or property requested or demanded; or

> (II)   will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded….

*Id*. § 3729(b)(2)(A)(ii).

37.    For each false claim or other FCA violation, the statute provides for the assessment of treble damages, plus a civil penalty. *Id*. § 3729(a)(1)(G).[1]

38.    The FCA provides for payment of a percentage of the United States' recovery to a private individual who brings suit on behalf of the United States (the "Relator") under the FCA. *See id*. § 3730(d).

---

[1] 31 U.S.C. § 3729(a)(1)(G) provides a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 104-410, 104 Stat. 890 (1990), *amended by* the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, 129 Stat. 599 (2015); *see* 28 U.S.C. § 2461 note. On June 19, 2020, the Department of Justice promulgated a Final Rule increasing the penalty for FCA violations occurring after November 2, 2015. For such penalties assessed after June 19, 2020, the minimum penalty is $11,665 and the maximum is $23,331. *See* 28 C.F.R. § 85.5; 85 F.R. 37005 (June 19, 2020).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## B.    The Medicare Program

39.    The Medicare program pays for certain healthcare services provided to certain segments of the population. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. *See* 42 U.S.C. §§ 1395 *et seq.*

40.    HHS, through CMS, administers the Medicare program.

41.    The Medicare program has four parts. As relevant here, Medicare Part B covers medical services rendered by eligible medical professionals in the office or outpatient setting, 42 U.S.C. §§ 1395j to 1395w-5.

42.    CMS enters into agreements with healthcare providers to participate in the Medicare program. Individuals or entities who are participating providers in Medicare may seek reimbursement from CMS for services rendered to patients who are Medicare beneficiaries.

43.    To enroll as an authorized participant in Medicare, providers are required to make the following certification:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me or the organization [applying for enrollment]. The Medicare laws, regulations, and program instructions are available through the Medicare Administrative Contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions….

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

Medicare Enrollment Application: Physicians and Non-Physician Providers, CMS-855I, at 23.[2]

44.     A provider's compliance with applicable Medicare program rules and regulations is material to CMS's decision to pay and its subsequent payment of claims. In order to be reimbursable by Medicare, services must be medically necessary. *See* 42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R. § 411.15(k).

45.     After enrolling in Medicare, to receive payment under Medicare Part B, a provider must submit claims to the appropriate Medicare Administrative Contractor or "MAC"[3] using a CMS-1500 form.[4] The CMS-1500 form requires the provider to identify the services for which reimbursement is sought using a five-digit Current Procedural Terminology ("CPT") or Healthcare Common Procedural Coding System ("HCPCS") code. The amount of Medicare reimbursement is based on the lesser of (a) the actual charge or (b) the fee for the appropriate CPT or HCPCS code on a standardized fee schedule established by the Secretary of HHS.

---

[2] *Available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/cms855i.pdf (last accessed Mar. 3, 2021).

[3] A MAC is a private insurer awarded a geographic jurisdiction to process medical claims for Medicare beneficiaries. At all relevant times the MACs for Defendants' jurisdictions were Palmetto GBA, LLC (Georgia and Alabama), Novitas Solutions, Inc. (Maryland), and First Coast Service Options, Inc. (Florida).

[4]     *Available      at*      https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/CMS1500.pdf (last accessed Mar. 2, 2021).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

46.    The CMS-1500 form also requires the provider to make the following

certification:

> In submitting this claim for payment from federal funds, I certify that:
> 1) the information on this form is true, accurate and complete … [and]
> 4) **this claim … complies with all applicable Medicare and/or
> Medicaid laws, regulations, and program instructions for payment**
> …

Form CMS-1500 at 2 (emphasis added).

47.    A provider may also submit the electronic equivalent of this claim form,

which contains a substantially similar certification.

48.    CMS guidance as to electronic claims submission is found in Chapter

24 of the Claims Manual. Among other things, the guidance specifies the minimum

content of the enrollment form that a local MAC may use to sign up providers to

submit claims electronically. Per the Claims Manual, such an enrollment form must

contain, and the enrolling provider must acknowledge, at least the following

statements:

> The provider agrees to the following provisions for submitting
> Medicare claims electronically to CMS or to CMS' A/B MACs ….
>
> * * *
>
> 7. That it will submit claims that are accurate, complete, and truthful;
>
> * * *
>
> 12. That it will acknowledge that all claims will be paid from Federal
> funds, that the submission of such claims is a claim for payment under
> the Medicare program, and that anyone who misrepresents or falsified
> or causes to be misrepresented or falsified any record or other

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

information relating to that claim that is required pursuant to this agreement may, upon conviction, be subject to a fine and/or imprisonment under applicable Federal law; [and]

\* \* \*

14. That it will research and correct claim discrepancies[.]

Claims Manual, Ch. 24 § 30.2.

49.     The submission of such a certification, if false, is a violation of the FCA. 31 U.S.C. § 3729(a).

50.     Each such false certification is a separate violation of the FCA.

## C.    The Medicaid Program

51.     Congress enacted Medicaid under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq*.

52.     Medicaid is a jointly funded cooperative venture between the federal and state governments to provide healthcare to certain groups, primarily the poor and the disabled. *See* 42 C.F.R. §§ 430.0 *et seq*.

53.     Under the Medicaid program, the United States, through CMS, pays a specified percentage of each state's Medicaid program expenditures, known as the Federal Medical Assistance Percentage. *See* 42 U.S.C. § 1396d(b).

54.     For example, Georgia's Medicaid Program is administered by the Georgia Department of Community Health (DCH).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

55.    To enroll in the Medicaid program, each provider must sign a Medicaid provider agreement with their respective states. Enrolled providers must agree to abide by the rules, regulations, policies and procedures governing claims for payment, and to keep and allow access to records and information as required by Medicaid.

## VI.
## DEFENDANTS' FRAUD

### A.    2021 Revised Guidelines for E/M Codes

56.    In the CY2020 Physician Fee Schedule final rule, CMS adopted the American Medical Association's ("AMA") newly revised guidelines for office/outpatient E/M visit codes, which went into effect January 1, 2021.[5]

57.    The AMA's new guidelines allow providers to select an E/M level based on either time spent by the provider, or the complexity of medical decision making (MDM).[6]

58.    As relevant here, HCPCS codes 99204 and 99214 represent the second-highest level of care for an E/M service (Level 4) for new and established patients, respectively.

---

[5] *See* 84 F.R. 62847-48 (Nov. 15, 2019) (CY2020 PFS final rule); *see also* 85 F.R. 84548 (Dec. 28, 2020).

[6] *See* https://www.ama-assn.org/practice-management/cpt/cpt-evaluation-and-management (last accessed Mar. 2, 2021).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

59.    If time is used to determine the E/M level, codes 99204/99214 are appropriate if the provider spends 45 to 59 minutes on the visit for a new patient, or 30 to 39 minutes on the visit for an established patient.[7]

60.    If MDM is used to determine the E/M level, codes 99204/99214 are appropriate if the MDM level is "moderate."

61.    The MDM level is comprised of the following three elements: (1) Number and complexity of problems addressed; (2) Amount and complexity of data reviewed; and (3) Risk of complications or morbidity from additional testing or treatment.

62.    To qualify for a particular MDM level, two of the three elements must be met or exceeded. In relevant part, an MDM level of "moderate" requires the following elements:[8]

**(1)    Element 1: Number and Complexity of Problems Addressed**
- 1 or more chronic illnesses with exacerbation, progression, or side effects of treatment; or
- 2 or more stable chronic illnesses; or
- 1 undiagnosed new problem with uncertain prognosis; or
- 1 acute illness with systemic symptoms; or
- 1 acute complicated injury

---

[7] *See* https://www.ama-assn.org/system/files/2019-06/cpt-office-prolonged-svs-code-changes.pdf (last accessed Mar. 2, 2021), at 10 (pdf page).
[8] *See id*. at 7.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

(2) **Element 2: Amount and/or Complexity of Data to be Reviewed**
(Must meet at least one category below)
- Category 1: Any combination of 3 from the following
    1. Review of prior external note(s) from each unique source
    2. Review of the result(s) of each unique test
    3. Ordering of each unique test
    4. Assessment requiring an independent historian
- Category 2: Independent interpretation of a test performed by another physician/other qualified health care professional (not separately reported)
- Category 3: Discussion of management or test interpretation with an external physician, or other qualified health care professional or appropriate source

(3) **Element 3: Risk of Complications and/or Morbidity or Mortality of Patient Management**
- There must be moderate risk of morbidity from additional diagnostic testing or treatment

63.    Whether the E/M Level is determined by time or MDM level, the performance and/or interpretation of a diagnostic test during a patient encounter are not included in determining the E/M service when reported with a separate CPT code.[9]

**B.    Defendants' Fraudulent Coding**

64.    Defendants offer COVID-19 antigen testing at their urgent care clinics. The antigen test is also known as the rapid test because it can be performed on-site and results can be ready in as little as 30 minutes.

---

[9] *Id.* at 2.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

65.    Defendants provide the rapid test to any patient who requests the test or presents even mild (and non-specific) symptoms, such as a cough or sore throat.

66.    Most of the patients whom Defendants test have mild or no symptoms and test negative for the virus.

67.    For such patients, Defendants' providers spend just a few minutes per visit, primarily to announce the test result. The vast majority of patients are then sent home with the one-page CDC guidelines sheet for COVID-19 testing, without follow-up care.

68.    Providers do not perform any significant medical assessment or decision-making for these patients. They do not examine prior medical records, consult other providers or independent historians, or perform additional tests or procedures.

69.    Defendants code and bill each such visit as both an E/M visit and a COVID-19 antigen test (using CPT code 87426).

70.    Prior to about January 15, 2021, CRH providers were instructed how to perform their examinations to qualify for a Level 4 E/M code, and that they should routinely perform this level of service.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

71.    On or about January 15, 2021, Dr. James Yost, the Chief Medical Officer for CRH, issued a company-wide email to all CRH providers announcing a mandatory new coding policy for patients who receive COVID-19 tests.

72.    Under the new policy, a patient even suspected of having COVID-19 should be coded as receiving a Level 4 E/M visit (CPT codes 99204/99214) as opposed to a Level 2 or Level 3 E/M visit, even if the patient has mild or no symptoms and tests negative for COVID-19. *See* **Exhibit A** at 13.

73.    The written policy permitted providers to code a lower E/M Level only when the patient had no symptoms *and* no known exposure to COVID-19. *See id*. at 12.

74.    However, the level of service rendered by Defendants' providers did not meet the AMA guideline requirements for a Level 4 E/M visit: the time spent per encounter did not exceed the minimum 30-minute or 45-minute thresholds, and the level of medical-decision making did not rise to moderate complexity.

75.    Moreover, because the COVID-19 antigen test was coded and billed separately, that test must be excluded from the time spent or MDM inquiry when determining the E/M Level.

76.    Dr. Yost also issued guidance on how to document the patient visits in their Electronic Medical Records ("EMR") system to justify the higher E/M level.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

77.    Specifically, Dr. Yost instructed providers always to document that the patient presented "acute" and "systemic symptoms," even when a patient was asymptomatic, tested negative, and only reported possible exposure to COVID-19. *See* **Exhibit A** at 14.

78.    Dr. Yost also instructed providers to select a "moderate" level of risk of complications or morbidity, even though virtually all such patients were sent home with boilerplate discharge instructions and often did not require follow-up care. *Id*.

79.    Once the provider makes the selections as instructed, the EMR automatically assigns CPT code 99204 or 99214 to the E/M portion of the patient visit.

80.    Several providers expressed disagreement with the new policy, including Relator Bentley.

81.    Upon realizing that the new policy violated the AMA's coding guidelines, Relator Bentley refused to follow the policy and continued to code COVID-19 tests for patients with minor symptoms as Level 2 or Level 3 E/M visits.

82.    On February 3, 2021, Dr. Yost emailed Relator Bentley a spreadsheet of all patients she had refused to upcode after the policy went into effect, instructing

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

her to fix the discrepancies between the "documentation and the risk level chosen."
Relator Teckle was likewise emailed by Dr. Yost and told to review charts to upcode.

83.    Dr. Yost further explained that CRH was "holding these claims up"
until Relator Bentley corrected the documentation.

84.    On February 9, 2021, Dr. Yost sent out a company-wide email, stating
that CRH would be conducting an audit of individual providers' charts, and that the
audit was "extremely time sensitive as our ability to bill insurance and balance the
month is on hold."

85.    Thereafter, Relator Bentley and Relator Teckle received weekly emails
from billers at CRH, again urging her to correct "discrepancies" in her patient charts
using the new coding guidelines.

86.    Relator Bentley persisted in her resistance to what she knew was fraud.

87.    However, CRH's scare tactics and constant badgering appear to have
worked against Relator Bentley's colleagues. At least two CRH providers confided
to her that they were following the new coding policy.

88.    Relator Bentley has reviewed patient charts for the CRH clinic in
Woodstock, Georgia, and has confirmed that, as of February 18, 2021, patients with
minor symptoms who test negative for COVID-19 have been coded as receiving

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

Level 4 E/M visits. She further confirmed that a subset of these patients has Medicare or Medicaid.

89.    Relator Teckle has also reviewed patient charts for the CRH clinics he oversees as Regional Medical Director. He has confirmed that patients with minor symptoms who test negative for COVID-19 have been coded as receiving Level 4 E/M visits.

90.    In fact, Relator Teckle's own extended family went to a CRH clinic for routine COVID testing and their insurance was billed as a Level 4 E/M code.

91.    In addition to the patient charts, Relator Teckle has reviewed patients' billing and payment history, as well as any outstanding balances, in the EMR.

92.    Relator Teckle has confirmed that Defendants have presented reimbursement claims to, and have received payment from, Medicare and Medicaid for these upcoded visits.

## COUNT I
## FEDERAL FALSE CLAIMS ACT:
## PRESENTATION OF FALSE CLAIMS

93.    As described above, Defendants knowingly presented or caused to be presented claims for payment to CMS and/or its MACs for E/M services that were not rendered at the level for which reimbursement was claimed.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

94.    The conduct alleged above applies jointly and severally to each Defendant because CRH's upcoding policy was implemented at most, if not all, CRH clinics, including clinics operated by the Peachtree Immediate Care Defendants.

95.    The presentation of these false claims caused CMS and/or its MACs to pay out monies that they would not have paid if they had known of the falsity of these claims.

96.    CMS and its MACs are grantees or other recipients of money from the United States Government within the meaning of 31 U.S.C. § 3729(b)(2)(A)(ii). All such money is to be spent to advance the United States' interest in the Medicare program.

97.    Accordingly, Defendants' knowing presentations of false or fraudulent claims for payment to CMS and/or its MACs were violations of 31 U.S.C. § 3729(a)(l)(A).

98.    Each presentation of a false or fraudulent claim to CMS and/or its MACs is a separate violation of the FCA.

99.    By reason of the false or fraudulent claims that Defendants knowingly presented, the United States has been damaged in an amount to be proven at trial.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## COUNT II
## FEDERAL FALSE CLAIMS ACT:
## FALSE RECORD OR STATEMENT

100.   As described above, Defendants knowingly made and used false records and statements when they caused claims for payment to be presented to CMS and/or its MACs, including false documentation of patient visit records.

101.   The conduct alleged above applies jointly and severally to each Defendant because CRH's upcoding policy was implemented at most, if not all, CRH clinics, including clinics operated by the Peachtree Immediate Care Defendants.

102.   CMS and its MACs are grantees or other recipients of money from the United States Government within the meaning of 31 U.S.C. § 3729(b)(2)(A)(ii). All such money is to be spent to advance the United States' interest in the Medicare program.

103.   Accordingly, Defendants' knowing making and use of false records or statements material to the false or fraudulent claims for payment that Defendants submitted to CMS and/or its MACs were violations of 31 U.S.C. § 3729(a)(l)(B).

104.   Each such making or use of a false record or statement is a separate violation of the FCA subject to a civil penalty pursuant to 31 U.S.C. § 3729.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## COUNT III
## GEORGIA STATE FALSE MEDICAID CLAIMS ACT:
## <u>PRESENTATION OF FALSE CLAIMS</u>

105.   As described above, Defendants knowingly presented or caused to be presented claims for payment to the State of Georgia and DCH for E/M services that were not rendered at the level for which reimbursement was claimed.

106.   The conduct alleged above applies jointly and severally to each Defendant because CRH's upcoding policy was implemented at most, if not all, CRH clinics, including clinics operated by the Peachtree Immediate Care Defendants.

107.   The presentation of these false claims caused the State of Georgia to pay out monies under the Georgia Medicaid program that they would not have paid if they had known of the falsity of these claims.

108.   Accordingly, Defendants knowingly presented false or fraudulent claims for payment in violation of Ga. Code Ann. § 49-4-168.1(a)(1).

109.   Each false or fraudulent claim submitted to the Georgia Medicaid program is a separate violation of the Georgia State False Medicaid Claims Act.

110.   By reason of the false or fraudulent claims that Defendants knowingly presented, Georgia has been damaged in an amount to be proven at trial.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## COUNT IV
## GEORGIA STATE FALSE MEDICAID CLAIMS ACT:
## <u>FALSE RECORD OR STATEMENT</u>

111.   As described above, Defendants knowingly made and used false records and statements when they caused claims for payment to be presented to Georgia and DCH, including false documentation of patient visit records.

112.   The conduct alleged above applies jointly and severally to each Defendant because CRH's upcoding policy was implemented at most, if not all, CRH clinics, including clinics operated by the Peachtree Immediate Care Defendants.

113.   Accordingly, Defendants' knowing making and use of false records or statements material to the false or fraudulent claims for payment that Defendants submitted to Georgia and DCH were violations of Ga. Code Ann. § 49-4-168.1(a)(2).

114.   Each making or using of false records or statement is a separate violation of the Georgia State False Medicaid Claims Act.

115.   By reason of the false records or statements that Defendants knowingly made or used, Georgia has been damaged in an amount to be proven at trial.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## **PRAYER FOR RELIEF**

**WHEREFORE**, Relators respectfully request that this Court enter judgment in their favor and that of the United States and the State of Georgia, and against Defendants, granting the following on all Counts:

(A)    an order requiring Defendants to immediately cease and desist from the conduct described herein and all similar conduct;

(B)    an award to the United States for treble its damages, a statutory penalty for each violation of the FCA, and for its costs pursuant to 31 U.S.C. § 3729(a)(3);

(C)    an award to Georgia for treble its damages, a statutory penalty for each violation of the Georgia State False Medicaid Claims Act, and for its costs pursuant to Ga. Code Ann. § 49-4-168.2(i);

(D)    an award to Relators in the maximum amount permitted under 31 U.S.C. § 3730(d) and Ga. Code Ann. § 49-4-168.2(i), and for the reasonable attorney's fees and costs they incurred in prosecuting this action;

(E)    awards to the United States, the State of Georgia, and Relators for pre- and post-judgment interest at the rates permitted by law; and

(F)    an award of such other and further relief as this Court may deem to be just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator demands trial by jury on all questions of fact raised by the Complaint.

Dated: March 9, 2021

Respectfully submitted,

**BROWN, LLC**
**Lead Counsel**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

*/s/ Chunsoo Park*
Chunsoo "Terence" Park
Jason T. Brown
(*pro hac vice* applications
forthcoming)
111 Town Square Place, Suite 400
Jersey City, NJ 07310
(877) 561-0000 (phone)
(855) 582-5297 (fax)
*terence.park@jtblawgroup.com*
*jtb@jtblawgroup.com*

**BRACKER & MARCUS LLC**

*/s/ Jason Marcus*
Jason Marcus
Georgia Bar No. 949698
3355 Lenox Road, Suite 660
Atlanta, GA 30326
(770) 988-5035 (office)
(678) 648-5544 (fax)
*Jason@FCAcounsel.com*